[No. 28070-8-I.    Division One.    April 27, 1992.]

MARLIN E. CURTIS, ET AL, *Appellants,* v. O. GRANT ZUCK, ET AL, *Respondents.*

*James F. Flynn,* for appellants.

*Hugh Lewis* and *Simonarson, Visser, Zender & Thurston,* for respondents.

COLEMAN, J. — Marlin E. Curtis and Audrey Louise Curtis, et al., appeal the Superior Court's grant of summary judgment to O. Grant Zuck and Phyllis M. Zuck, et al., which awarded them title by adverse possession to land lying south of Bennett Road and a nonexclusive prescriptive easement over Bennett Road, subject to factfinding regarding its northeastern boundary. We affirm.

In 1888, the plat was filed for Fenton's Addition, a subdivision just outside of Bellingham, Whatcom County, Washington. The plat showed the intended location for Glass Street, which was to run east and west, but Glass Street was never built. Until 1909, a Washington statute provided that:

> Any county road, or part thereof, which had heretofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority is granted for opening the same, shall be and the same is hereby vacated, and the authority for building the same barred by lapse of time.

*Burkhard v. Bowen,* 32 Wn.2d 613, 618, 203 P.2d 361 (1949) (quoting Laws of 1889, ch. 19, § 32, p. 603 (approved Mar. 7, 1890)). Both parties concede that this statute caused the vacation of Glass Street in approximately 1893. However, although the public easement over Glass Street was vacated and adjacent property owners took ownership of the vacated street to its center line, the property owners' private ease-

ments were not extinguished by the statute. *Cf. Burkhard*, at 620-23 (private easement unaffected by vacation of public easement under the act of 1890) (citing *Van Buren v. Trumbull*, 92 Wash. 691, 159 P. 891 (1916)). In light of this private easement, a gravel roadway was ultimately constructed to provide access for adjacent property owners. The gravel roadway, now known as Bennett Road, lies within and somewhat north of the platted location for Glass Street.[1]

The appellants are Marlin E. Curtis and Audrey Louise Curtis, husband and wife, and the Estate of Agnes P. Keefe through its executor, Walter P. Pullen. The Curtises and Keefe both own residential building lots in the Fenton Addition on the north side of vacated Glass Street. Members of the Keefe family have owned all of block 32 since 1895. In 1955, the Curtises bought lots 2 through 11, block 31, and in 1983, they bought lot 1, block 31, which abuts vacated Glass Street on the north side.

The respondents are O. Grant Zuck and Phyllis M. Zuck, husband and wife; Donald B. Flescher and Grace F. Flescher, husband and wife; and Mark Dombrosky and Stacey Dombrosky, husband and wife. The Zucks, Fleschers, and Dombroskys own homes in the Fenton Addition which are built on residential lots south of Bennett Road and vacated Glass Street.

The Zucks constructed their home in the Fenton Addition in 1949 after purchasing lots 14 and 15, block 46. At the time of their purchase, the Zucks were told that Bennett Road marked the northern boundary of their property. The Zucks assumed that what they had been told was true and did not hire a surveyor. However, their northern boundary actually lies at the center line of vacated Glass Street, which runs parallel to and somewhat south of Bennett Road. The Zuck dwelling was constructed about 10 feet into the southerly portion of the vacated right of way of Glass Street. In addition, Bennett Road, which provides access to

---

[1]A diagram of the relevant portion of the Fenton Addition plat is appended.

the Zuck, Flescher, and Dombrosky homes, encroaches upon the southern portion of the lots owned by the Curtises and Keefe.

The Zucks' 10-foot encroachment upon the vacated right of way of Glass Street was inconsistent with the private easement of the Curtises' predecessors in interest. However, the Zucks have lived on their property continuously since 1949. During that 40-year period, they and their neighbors have used Bennett Road for access to their properties and have maintained yards and driveways within the right of way of vacated Glass Street on the southern edge of Bennett Road. Further, beginning in the 1960's, Whatcom County periodically maintained Bennett Road, by grading and spreading gravel as needed. Whatcom County's maintenance continued for about 20 years, until the Curtises complained.

The Curtises and Keefe (hereinafter the Curtises) filed suit in Whatcom County Superior Court to eject the Zucks, Dombroskys and Fleschers (hereinafter the Zucks) from Bennett Road and to quiet title to that portion of their property affected by the encroachment of Bennett Road. The Superior Court entered summary judgment for the Zucks. Essentially, the Superior Court divested the Curtises of their implied easement over that portion of vacated Glass Street historically occupied by the Zucks and granted the Zucks a nonexclusive prescriptive easement over those portions of Bennett Road encroaching on the Curtis property. Because the northeastern boundary of Bennett Road was a disputed issue of fact, the Superior Court reserved that issue for trial. The Curtises appeal.

We initially consider whether the Superior Court erred by failing to apply the rule of *Burkhard* and *Van Buren* and to thus find that the Zucks may not deny the Curtises use of their private easement over vacated Glass Street. *Burkhard* provides that "since the dedicator of a plat could not defeat a grantee's right to an easement in the street upon which his land abuts, common grantees from him cannot, as among themselves, question the right of ingress and egress

over the street as shown on the plat." (Italics omitted.) *Burkhard*, at 623 (quoting *Howell v. King Cy.*, 16 Wn.2d 557, 559, 134 P.2d 80, 150 A.L.R. 640 (1943)). *Burkhard* conforms to the rule of *Van Buren* which provides:

> As between the grantees of a common grantor who had platted and sold land, rights are to be primarily determined by reference to the right of the grantor. That is to say, if the common grantor could not deny the full effect of his deed and the right of ingress and egress, his grantee could not do so.

*Van Buren*, at 694. In *Burkhard* and *Van Buren*, the facts were similar, but not identical, to the facts presented here.

In *Burkhard*, a subdivision platted in 1889 was not opened within 5 years, and the public easements over alleys and streets were vacated by statute. *Burkhard*, at 615, 620. Bowen acquired two lots near the end of a vacated alley in 1922, and Burkhard acquired nine lots which were adjacent to Bowen's and which straddled the alley closer to its opening. At the time Burkhard acquired his property, eight of the lots were fenced as one unit, completely obstructing Bowen's access to the alley. *Burkhard v. Bowen*, 32 Wn.2d 613, 614-15, 203 P.2d 361 (1949). Although Burkhard filed suit to extinguish Bowen's private easement over the alley as platted, asserting adverse possession, the trial court found and the appeals court affirmed the continuing validity of Bowen's private easement. *Burkhard*, at 616-17, 623-24.

In *Van Buren v. Trumbull*, 92 Wash. 691, 159 P. 891 (1916), a subdivision was platted in 1888, showing "a street through the center of the tract, known as Clark [S]treet." *Van Buren*, at 691. However, the street was not opened by the public within a 5-year period, and the public right of way was eliminated. *Van Buren*, at 693-95. J.D. Van Buren, et al. (hereinafter Van Buren) purchased land on one side of Clark Street, and E.C. Trumbull, et al. (hereinafter Trumbull), purchased land on the other side of Clark Street. *Van Buren*, at 691. At the time of Trumbull's purchase, Van Buren "or their predecessors had fenced [off] all . . . of Clark [S]treet abutting [Trumbull's] property", and "the question of title to Clark [S]treet [was] the subject of some negotiation among the

parties." *Van Buren*, at 692. For a while, Trumbull egressed over Van Buren's property through a gate to established streets. However, when differences arose, Van Buren closed and locked the gate, barring access to Trumbull's former route of egress, and sued to quiet title to the land lying within vacated Clark Street, asserting adverse possession. *Van Buren*, at 692. In 1916, the trial court's decision affirming the validity of Trumbull's private easement over vacated Clark Street was upheld on appeal. *Van Buren*, at 694-95, 698.

■ During summary judgment proceedings below, the Superior Court held that the rule of *Burkhard* and *Van Buren* did not apply because neither the Curtises nor the Zucks had attempted to extinguish a private easement by fencing off another's right of access. The Curtises assert that this amounted to error and that *Burkhard* and *Van Buren* are controlling. We disagree. Whereas in *Burkhard* and *Van Buren* the appellants attempted to extinguish by affirmative exclusion the private easement of an adjoining landowner, in the case presented there is no such attempt. The Curtises are attempting to enforce a private easement as platted, and in response, the Zucks essentially assert that the private easement they share with the Curtises has simply shifted due to a period of long use which predates both parties' ownership. Because the case presented is factually distinguishable, we decide that the rule of *Burkhard* and *Van Buren* is not controlling.

■ We next address whether the Superior Court erred in granting summary judgment because there are disputed, material issues of fact. "Summary judgment is appropriate 'if the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986) (quoting CR 56(c)). In reviewing a grant of summary judgment, this court "place[s itself] in the position of the trial court, assuming facts most favorable to the nonmoving party". *Del Guzzi*, at 882.

The Curtises first allege that the location of Bennett Road is a disputed, material issue of fact which prevents granting the Zucks, by summary judgment, title by adverse possession to those portions of vacated Glass Street lying south of Bennett Road. To acquire title by adverse possession, "the possession must be: (1) exclusive, (2) actual and uninterrupted, (3) open and notorious and (4) hostile and under a claim of right[.]" *Chaplin v. Sanders*, 100 Wn.2d 853, 857, 676 P.2d 431 (1984). *Chaplin*, at 857. These elements must exist concurrently for 10 years. *Chaplin*, at 857 (citing RCW 4.16.020).

Essentially, the Curtises allege that Bennett Road began as a driveway and shifted over time, creating a material issue of fact as to whether the Zucks' possession of land lying south of Bennett Road was actual and uninterrupted for the statutory period. However, the Zucks have maintained their yard and driveway up to the southerly boundary of Bennett Road since they constructed their home in 1949, and the Whatcom County director of public works indicated that Bennett Road, "as it is now, was placed in existence in the early 1960s[.]" Letter from Paul Rushing, Director, Whatcom County Department of Public Works, to Marlin Curtis, appellant (Aug. 25, 1987) (Clerk's Papers, at 53). The Curtises concede that at least by 1976 Bennett Road was located along the northerly portion of vacated Glass Street and identified by a street sign titled "Bennett Avenue". Thus, at the time this action was commenced in 1989, the Zucks had occupied the land lying south of Bennett Road, as it now stands, for at least 13 years.

The Curtises place great weight on their allegation that between the mid-70's and the mid-80's county road graders gradually moved Bennett Road in a northerly direction. However, this "movement" occurred during routine graveling and grading over a 20-year period to accommodate the large trees growing near the southern boundary of Bennett Road. Thus, although Bennett Road was widened on its northern

boundary through routine maintenance, its southern boundary, which bounded the area of adverse possession, remained constant. Thus, the Zucks' possession of the land lying south of Bennett Road was actual and uninterrupted for the statutory period.

■ The Curtises next allege that the County's maintenance of Bennett Road creates a disputed issue of material fact about whether the Zucks' use of the road was exclusive and prevents the grant, by summary judgment, of a nonexclusive prescriptive easement over those portions of Bennett Road encroaching on the Curtises' property. We disagree. The issue of county maintenance is immaterial because a claimant seeking a nonexclusive prescriptive easement need not prove that his or her use of the other's land has been exclusive. To establish a prescriptive right of way over the land of another, a

> claimant [need only] prove that his use of the right of way has been, for a period of ten years, open, notorious, continuous, uninterrupted, over a uniform route, adverse to the owner . . ., and with the knowledge of such owner at a time when he was able in law to assert and enforce his rights.

*Huff v. Northern Pac. Ry.*, 38 Wn.2d 103, 108, 228 P.2d 121 (1951). In addition, county maintenance actually lends credibility to the Zucks' contention that the road was well established and continuously used by themselves and their neighbors.

The order of summary judgment is affirmed, and the cause is remanded for factfinding regarding the northeastern boundary of Bennett Road.

GROSSE, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied June 3, 1992.