[No. 9596–0–I.   Division One.   January 24, 1983.]

NORTHWESTERN INDUSTRIES, INC., *Appellant,* v. THE
CITY OF SEATTLE, *Respondent.*

*Paul V. Rieke* and *Quigley, Hatch, Loveridge & Leslie,* for appellant.

*Douglas N. Jewett, City Attorney,* and *Judith B. Barbour, Assistant,* for respondent.

DURHAM, A.C.J.—Northwestern Industries, Inc. (Northwestern) appeals a judgment quieting title in the City to an easement for street purposes.

Northwestern is the owner of blocks 79 and 80 of Gilman's Addition to the City of Seattle. These blocks abut what is now 25th Avenue West in Seattle (platted as 6th Avenue West) on both the west and east sides. Northwestern's predecessor in interest had filed the plat for Gilman's Addition in May 1890. Although the dedication of streets in the plat was to the City, the area was at the time in unincorporated King County. In April 1891, the area was annexed to the City.

In March 1890, the Legislature had passed the "nonuser" statute which provided:

> Any county road, or part thereof, which has heretofore been or may hereafter be authorized, which remains unopened for public use for the space of five years after the order is made or authority granted for opening the same, shall be and the same is hereby vacated, and the authority for building the same barred by lapse of time.

Laws of 1889, ch. 19, § 32, p. 603.[1]

The portion of 25th Avenue West which runs between Northwestern's parcels remained unopen for over 5 years after the addition was platted. Relying on the nonuser statute, Northwestern sued to quiet title in itself to the street, free of any easements or rights in the City of Seattle. The trial court held that operation of the nonuser statute was tolled by annexation and exempted the City from application of the statute. It quieted title to the street easement in the City.

Northwestern assigns as error the trial court's holding that annexation tolled the statute. It bases its arguments on rules of statutory construction and asks us to interpret the statute as applicable to the City as well as the County for roads originally in the County's territory.

---

[1] The statute was amended in 1909 to exclude roads dedicated by plat and is now codified at RCW 36.87.090. The amendment is not retroactive to the periods at issue in this case. *Gillis v. King Cy.*, 42 Wn.2d 373, 377, 255 P.2d 546 (1953).

■ The court's primary responsibility in interpreting a statute is to ascertain and consider the intent of the Legislature in passing the statute. *Burlington N., Inc. v. Johnston,* 89 Wn.2d 321, 326, 572 P.2d 1085 (1977). In order to do so, we must examine the wording and statutory context of the nonuser statute.

■ The nonuser statute was enacted as a part of an act "Relating to County Roads". The act as a whole deals with the means of establishing, controlling, and vacating county roads. The nonuser statute creates a limitation on the right of a county to exercise its authority to open a county road. It applies to any road "under the control and supervision of the boards of county commissioners". *Murphy v. King Cy.,* 45 Wash. 587, 593, 88 P. 1115 (1907). There is nothing in the nonuser statute or in the act as a whole which creates or limits the rights of incorporated cities over streets within their city limits. The intent of the Legislature in passing the nonuser statute was to govern county authority over county roads.

Northwestern first argues that the only method given in the statute for avoiding its application is the opening of a road for public use. Referring to the rule that expression of one thing excludes another, *Dominick v. Christensen,* 87 Wn.2d 25, 26, 548 P.2d 541 (1976), it urges that the court should not read in annexation as a further method. Annexation is, however, a city act, not a county act. This is clearly the reason that it is not mentioned in a statute passed as part of an act dealing exclusively with county authority.

Furthermore, upon annexation the subject territory becomes subject to the rules and ordinances of the city. *Hoops v. Burlington N., Inc.,* 83 Wn.2d 396, 401, 518 P.2d 707 (1974); *Ettor v. Tacoma,* 77 Wash. 267, 137 P. 820 (1914). Seattle's Charter specifically provided for power in the city council to "establish . . . streets . . . and to regulate and control the use thereof and to vacate the same". Seattle City Charter, art. 4, § 22, ¶ 7 (1890). Absent a clear and unambiguous directive from the Legislature, courts will not construe state statutes to interfere with the power of a

first–class city such as Seattle over its own streets. *See Nelson v. Seattle,* 64 Wn.2d 862, 866, 395 P.2d 82 (1964). We do not find in the nonuser statute a clear directive that the City is limited to the vacation procedures applicable to counties. Nor do we find a directive that the City loses its power to open streets simply because the county authority to do so would have ended after 5 years.

Northwestern next argues that upon annexation the City acquires the territory subject to vested rights of the landowners. It claims that the nonuser statute creates a vested right to receive clear title after a road remains unopened for 5 years. It notes that fee title to a street remains in the abutting landowner, subject to the public's easement created by dedication. *Finch v. Matthews,* 74 Wn.2d 161, 167–68, 443 P.2d 833 (1968). When an unopened road remains in the county for 5 years after authorization, the easement is abandoned by operation of the nonuser statute and the abutting owner is left with an unencumbered fee. *Howell v. King Cy.,* 16 Wn.2d 557, 134 P.2d 80, 150 A.L.R. 640 (1943); *Tamblin v. Crowley,* 99 Wash. 133, 168 P. 982 (1917). Northwestern refers to this process as "reversion" of the fee to the landowner and asserts that this reversion is vested at the time of platting.

This interpretation misconstrues the interest created by the statute. The interest is more in the nature of a possibility of reverter and is not "vested" until 5 years have passed without opening. *Gillis v. King Cy.,* 42 Wn.2d 373, 378, 255 P.2d 546 (1953). Until that time, the interest may be defeated by the passing of the territory out of county control and therefore out of the reach of the statute's operation.

Northwestern further argues that statutes should not be construed to abrogate existing, though not necessarily vested, rights. *See Gillis,* at 378. This rule of construction is not applicable here. Northwestern is depending on a right created, if at all, by the very statute which the court must now construe. The right does not exist prior to or independent of the nonuser statute. The present case is, thus, dis-

tinguishable from cases holding that a statute should not alter or destroy existing rights; these cases involve construing a later statute which affects rights fixed by earlier statutes or by common law. *See, e.g., Blethen v. Blethen,* 177 Wash. 431, 32 P.2d 543 (1934); *Investment Co. v. Hambach,* 37 Wash. 629, 80 P. 190 (1905).[2]

Finally, Northwestern objects to the trial court's reliance on *Brokaw v. Stanwood,* 79 Wash. 322, 140 P. 358 (1914). The court in *Brokaw* found that incorporation of the Town of Stanwood tolled the operation of the nonuser statute. Northwestern argues strenuously that the relevant language in *Brokaw* is dictum and is not controlling precedent in this case. Even if the finding in *Brokaw* was dictum, however, our analysis of the statute shows that the court there made a correct statement of the law. The trial court did not err in following it.[3]

The nonuser statute creates only an "expectancy" in the abutting landowner that the land will be free eventually of county authority to open roads. *Gillis v. King Cy., supra.* In the present case, the county authority ended upon annexation and the "expectancy" was thus fulfilled. The City's authority to open roads is not addressed by the statute. We, therefore, hold that annexation by a city of territory containing unopened roads, not yet vacated by operation of the nonuser statute, tolls the operation of that statute.

---

[2]In one case the court has found that a statute, enacted after a town was incorporated, created a right which related back so that the town's incorporation was subject to that right. *Spring Water Co. v. Monroe,* 55 Wash. 195, 104 P. 202 (1909). *Spring Water* is distinguishable from this case, since it involved construction of a clearly curative statute. This statute was designed to validate a preincorporation ultra vires granting of a franchise. Plaintiff had relied on the franchise. The nonuser statute is not curative, nor has Northwestern detrimentally relied on any "right" created by it.

[3]Northwestern also argues that *Brokaw v. Stanwood,* 79 Wash. 322, 140 P. 358 (1914), should not be applied retroactively since the nonuser statute is essentially a statute of limitations. We are not, however, applying *Brokaw,* but merely agreeing with its interpretation of the statute.

Affirmed.

RINGOLD and SCHOLFIELD, JJ., concur.